# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| VIVIAN A. ROBERTS | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NO. 11-2054 |
| | * | |
| AMERICAN BANK & TRUST CO., INC., ET AL | * | SECTION "L" (5) |

## ORDER & REASONS

Before the Court are three motions: a Motion to Dismiss Claims against American Bank & Trust Co. and Marian Kinchen Pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(b)(1) (Rec. Doc. No. 7) filed by Defendants American Bank & Trust Co. and Marian Kinchen; a Motion to Dismiss Pursuant to Rules 12(b)(6) and 12(b)(1) (Rec. Doc. No. 17) filed by Defendants Penny Daigrepont, Claire Mayer, Shapiro & Daigrepont, and Eva Simkovitz; and a Motion for a Preliminary and Permanent Injunction (Rec. Doc. No. 10) filed by Plaintiff. The Court, having reviewed the submitted memoranda and the applicable law, now issues this Order & Reasons.

## I. BACKGROUND

This case arises out of an executory process proceeding instituted against Plaintiff by Defendant American Bank & Trust Co. ("American Bank"). Plaintiff avers that on April 9, 2009, she executed a note in favor of Defendant American Bank in the amount of $165,750. The note was secured by a mortgage on the property located at 40065 Emerald Drive, Unit A, Ponchatoula, Louisiana. Plaintiff became delinquent on that note, and Defendant American Bank instituted an executory process against her on June 7, 2011, in the Judicial District Court for the Parish of Tangipahoa, Louisiana. On June 24, 2011, Plaintiff removed the Executory Process

1

Petition to this court and filed an answer, asserting counterclaims against Defendant American Bank. In addition, Plaintiff asserted claims against the law firm of Shapiro & Daigrepont, LLC, as well as certain individuals with the law firm (collectively, "the Shapiro & Daigrepont Defendants"), and Ms. Marian Kinchen, an employee of Defendant American Bank (together with Defendant American Bank, "the American Bank Defendants"). On August 17, 2011, this Court granted American Bank's Motion to Remand, citing the lack of federal question jurisdiction over the removed foreclosure action, and further noting that the state court would address the need to strike Robert's Answer and Counterclaim pursuant to Article 2642 of the Louisiana Code of Civil Procedure.

On August 19, 2011, Plaintiff filed the instant suit in this Court, reiterating the same claims made in her counterclaims in the remanded action. Namely, Plaintiff seeks (1) to recover damages under the Truth-in-Lending Act for Defendant American Bank's alleged failure to make substantial disclosures to Plaintiff and failing to tender her two copies of a notice of a right to rescind on April 2, 2009; (2) to recover damages under the Fair Debt Collection Practices Act from the American Bank Defendants and the Shapiro & Daigrepont Defendants for their alleged harassing letters and phone calls; (3) to recover damages from the American Bank Defendants and the Shapiro & Daigrepont Defendants for their alleged violation of the automatic stay granted to Plaintiff upon her filing of a Chapter XIII bankruptcy petition; (4) to recover damages under the Louisiana Unfair Trade Practices and Consumer Protection Law from the American Bank Defendants and the Shapiro & Daigrepont Defendants; and (5) to have the note executed on April 9, 2009, declared null, void, and unenforceable. Furthermore, Plaintiff seeks various forms of equitable relief from this Court, specifically: (a) a preliminary and permanent injunction

against Defendant American Bank, restraining it from taking further action in the executory proceeding currently pending in state court; (b) a mandatory injunction against Defendant United States Agriculture, requiring it to provide Plaintiff with special loan servicing under 42 U.S.C. § 1472(h) and 7 C.F.R. §§ 1980.373 and 1980.374; (c) the appointment of a receiver to supervise and manage the activities and procedures of Defendant Shapiro & Daigrepont its to ensure that it complies with applicable federal laws; (d) the creation of a constructive trust for all monies received by Defendant American Bank from Plaintiff in connection with the April 9, 2009, note; and (e) an accounting by Defendant American Bank for all monies received from Plaintiff in connection with the April 9, 2009, note. Finally, Plaintiff asserts that the executory process procedure that was used by Defendant American Bank, codified in Articles 1633 through 1644 of the Louisiana Code of Civil Procedure, violates Plaintiff's substantive and procedural due process rights as guaranteed by § 1 of the Fourteenth Amendment and § 1 of the Civil Rights Act of 1871.

## II. PENDING MOTIONS

### A. American Bank and Marian Kinchen's Motion to Dismiss (Rec. Doc. No. 7)

The American Bank Defendants contend that Plaintiff fails to state causes of action upon which relief can be granted under any of the statutes allegedly violated. Moreover, Defendants argue that this Court lacks jurisdiction over her Plaintiff's claims related to the ongoing state court proceeding and the claims arising under the Bankruptcy Code. The Court will describe the arguments in turn and then address the applicable law and the Court's ruling.

#### 1. Truth-in-Lending Act

The American Bank Defendants argue that Plaintiff's claim under 15 U.S.C. § 1635 of the Truth-in-Lending Act fails as a matter of law for two reasons. First, they note that any action for damages under such provision must be brought within one year of the violation, pursuant to 15 U.S.C. § 1640(e). In addition, Defendants observe that Plaintiff does not allege fraudulent concealment or other actions by American Bank that would have prevented Plaintiff from discovering her claim. Defendants argue that because the alleged violation of the statute occurred on April 9, 2009, and this suit was filed in August 2011, the claim is proscribed.

Second, Defendants contend that the transaction between Plaintiff and Defendant American Bank is exempt from the right to rescind protected by the Truth-in-Lending Act. Defendants claim that, under the statute, a mortgagor has no duty to disclose the obligor's right to rescind in a purchase-money residential mortgage transaction. Citing *Ortiz v. Accredited Home Lender, Inc.*, 639 F. Supp. 2d 1159 (S.D. Cal. 2009), Defendants argue that they could not have violated a duty to disclose Plaintiff's right to rescind when no such duty existed. As a result, according to Defendants, Plaintiff's claim under the Truth-in-Lending Act should be dismissed.

Plaintiff made two responses to this argument. Plaintiff argues, first, that the date of Defendants' violation was July 7, 2011. Plaintiff avers that she mailed her notice of rescission to Defendant American Bank on June 20, 2011. Therefore, she argues, Defendant American Bank violated the statute when it failed to take steps to cancel the security interest it held on her property and return Plaintiff's money within twenty days, or on July 11, 2011. Because this suit was filed the following month, Plaintiff concludes that it is within the statute of limitations and should not be dismissed on those grounds.

Second, Plaintiff claims that the details of her mortgage transaction render it an exception to the residential mortgage transaction exception to the right to rescission. Under the Truth-in-Lending Act, there is a right to rescission in the context of a residential mortgage if the obligor had "previously purchased and acquired some interest to the dwelling." 12 C.F.R. § 226.2(a)(24). Plaintiff alleges that on February 21, 2009, she wrote a $1000.00 check as a down payment to the realty firm with whom she dealt in her purchase of the residence at issue. This check, she claims, created an enforceable contract between Plaintiff and Defendant American Bank. Citing *Estate of Martinek v. Martinek*, 140 Ill.App. 3d 621 (1989), Plaintiff contends that this down payment made her an equitable owner of the property. Therefore, she argues, when the loan was closed on April 9, 2009, her purchase was of a home in which she had previously acquired an interest. As a result, Plaintiff claims, her mortgage transaction would be subject to the Truth-in-Lending Act's right to rescission, and this claim should not be dismissed.

### 2. Fair Debt Collection Practices Act

The American Bank Defendants argue that Plaintiff's claim under the FDCPA fails as a matter of law also fails for two reasons. First, Defendants claim that the statute exempts both banks and their employees. Defendants assert that the FDCPA specifically excludes from its ambit creditors' employees collecting in the name of the creditor. *See* 15 U.S.C. § 1692a(6)(A). Furthermore, citing *Thomasson v. Bank One, Louisiana, N.A.*, 137 F.Supp. 2d 721 (E.D. La. 2001), American Bank claims that it, too, would be outside the reach of the FDCPA because it does not fit the definition of "debt collector" as the statute defines the term.

Second, the American Bank Defendants argue that Plaintiff's claim under the FDCPA is time-barred. Noting the one-year statute of limitations for violations of the Act, 15 U.S.C. §

1692k(d), Defendants argue that even if Plaintiff could bring a claim against them under the FDCPA, the violations are not alleged to have occurred within the past year, and therefore the suit is proscribed.

In response to the first argument, Plaintiff disputes the exemptions and contends that Defendants did not cite sufficient authority in support of their argument. In response to Defendant's argument that the claim was time-barred, Plaintiff asserts that the violation of the FDCPA occurred when Defendants made harassing phone calls, beginning February 3, 2011. Therefore, Plaintiff avers that the suit was filed within a year of the violations and is not time-barred.

### 3. Violation of the Automatic Stay

The American Bank Defendants argue that Plaintiff's claim that Defendants violated the automatic stay fails as a matter of law for two reasons. First, Defendants contend that this Court lacks subject matter jurisdiction over the issue. Citing *Eastern Equipment and Services Corporation v. Factory Point National Bank*, 236 F.2d 1098 (2d Cir. 2001), Defendants assert that claims under 11 U.S.C. § 362 must brought in bankruptcy court. Therefore, they argue, this claim must be dismissed for lack of subject matter jurisdiction.

Second, the American Bank Defendants contend that Plaintiff fails to state a claim for relief under § 362. Defendants assert that § 342(g)(2) provides that a "monetary penalty" may not be imposed on a creditor under § 362(k) for violation of an automatic stay unless the conduct that is the basis for the violation occurs after the creditor has received effective notice as provided under § 342 of the order of relief. Defendants argue that because Plaintiff's claim is for damages in the amount of $250,000, and because Plaintiff did not claim that the alleged conduct

of the American Bank Defendants occurred after such effective notice, Plaintiff has failed to state a claim under § 362.

Plaintiff has not responded to these arguments.

### 4. Louisiana Unfair and Deceptive Trade Practices Act

Defendant American Bank makes two arguments with respect to Plaintiff's claim under the Louisiana Unfair and Deceptive Trade Practices Act. First, American Bank asserts that under La. Rev. Stat. 51:1406, federally insured financial institutions and their subsidiaries are exempt from LUDTPA. Therefore, American Bank argues, Plaintiff has no claim against it, because it is an FDIC-insured bank. Second, American Bank asserts that the one-year statute of limitation on any claim under LUDTPA had already run by the time Plaintiff filed her claim in August 2011.

Plaintiff responded to Defendant's first argument by contending that, although the exemption under La. Rev. Stat. 51:1406 is broad, it does not encompass American Bank's alleged actions that are the subject of her claim. Citing *Bank of New Orleans and Trust Co. v. Phillips*, 415 So. 2d 973 (La. 1982), Plaintiff argues that because American Bank decided to foreclose using the executory process procedure, it should not be exempted from LUDTPA. Plaintiff did not respond to American Bank's second argument.

### 5. Louisiana Civil Code

The American Bank Defendants argue that Plaintiff has failed to state a claim under Article 1918 of the Louisiana Civil Code. Article 1918 allows for rescission of a conventional obligation due to incapacity or "undue or unw[anted] pressure." Defendants contend that Plaintiff has failed to state a claim for two reasons. First, Defendants argue that Plaintiff has

failed to allege that she was "deprived of reasoning" at the time of the transaction. Defendants argue that Plaintiff's alleged deprivation of "an understanding explication" of the documents provided to her by American Bank did not render her legally incapable of consenting to a contract, and that her claim lacks any basis for legal incapacity that would reach the level of "deprived of reason."

Second, Defendants contend that there is no valid claim for rescission based on "undue or unw[anted] pressure." Citing Louisiana Civil Code Article 1959, Defendants assert that consent is only negated "when it has been obtained by duress of such nature as to cause a reasonable fear of unjust and considerable injury to a party's person, property, or reputation." Defendants argue that because Plaintiff's complaint fails to allege any such reasonable fear of injury, Plaintiff's claim for rescission under the Louisiana Civil Code must be dismissed.

Plaintiff responds to the first argument by relying primarily on *Succession of Molaison*, 34 So. 2d 897 (1947). Plaintiff claims that *Molaison* stands as the leading Louisiana case on contractual incapacity and represents the proposition that a person of limited education and a lack of experience in business and finance, who does not understand the nature of a transaction into which she is entering, lacks the capacity to agree to a binding legal obligation. Plaintiff did not respond to Defendants' second argument.

Defendants filed a reply to Plaintiff's response to their first argument. In it, Defendants assert that the holding in *Molaison* is distinguishable, as the plaintiff in that case was suffering from an untreated case of diabetes, which resulted in an "obtuse" mental capacity. *Molaison*, 34 So.2d, *at* 902. Furthermore, Defendants point to a later Louisiana Court of Appeal case in which the court stated that the holding in *Molaison* "should be...restricted to its facts."

*Banks v. Johns*, 289 So. 2d 194, 198 (La. App. 1 Cir. 1973). In addition, Defendants note that the Louisiana Civil Code allows rescission in the case of incapacity "only upon [a] showing that the other party knew of should have known of that person's incapacity." La. Civ. Code Art. 1925. Defendants argue that because Plaintiff has not shown that Defendants knew of any incapacity at the time of contracting, Plaintiff fails to state a claim based on the Civil Code. Finally, Defendants argue that if the courts allowed rescission of every transaction entered into by a person of limited education and a lack of business experience, they would open themselves to thousands of claims and would undermine the "sanctity" of contractual obligations in Louisiana.

### 6. Injunctive relief, receivership, and accounting

Finally, Defendants American Bank and Ms. Kinchen argue that Plaintiff's requests for equitable relief, including a preliminary and permanent injunction, a receivership, and an accounting, are barred by the Anti-Injunction Act. Defendants assert that 28 U.S.C. § 2283 prohibits granting injunctions to stay state court proceedings, including mortgage transactions. Furthermore, Defendants contend, this Court must abstain from hearing the remaining equitable claims related to the state court proceeding because the foreclosure action has not yet come to final judgment and any ruling would interfere with state court rulings and effectively constitute injunctions in violation of the Anti-Injunction Act. Defendants cite *St. Clair v. Wertzberger*, 637 F. Supp. 2d 251 (D.C.N.J. 2009), in which a court held that it must abstain from hearing the debtor's FDCPA claims and dismiss the federal court action without prejudice because doing otherwise would violate the Anti-Injunction Act. Therefore, Defendants argue, all three claims for equitable relief should be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

Plaintiff responds that this case is brought under the first section of the Civil Rights Act of 1871, codified as 42 U.S.C. § 1983, under which, Plaintiff argues, a federal court may grant an injunction of a state court proceeding. In support of this assertion, Plaintiff cites *Mitchum v. Foster*, in which the Supreme Court stated that in passing the Civil Rights Act of 1871, "Congress plainly authorized the federal courts to issue injunctions in § 1983 actions, by expressly authorizing a 'suit in equity' as one of the means of redress." *Mitchum v. Foster*, 407 U.S. 225, 242 (1972). Plaintiff cites *Duncan v. Perez*, F.Supp. 181 (E.D. La. 1970), as an example of this court issuing an injunction against a state criminal action in a proceeding under § 1983.

Defendants filed a reply to Plaintiff's response, arguing that the precedent set by *Mitchum* is inapplicable to the case at bar. Defendants assert that the *Mitchum* holding only permitted injunctions as to state court actions "where the state law is flagrantly or patently violative of express constitutional prohibitions" or where there is a showing of bad faith, harassment, or other unusual circumstances. *Id.* at 230-31. Defendants further argue that the Court in *Mitchum* created a test for determining whether an exception to the Anti-Injunction Act applies, namely, "whether an Act of Congress, clearly creating a federal right or remedy enforceable in a federal court of equity, could be given its intended scope only by the stay of a state court proceeding." *Id.* at 238. Finally, Defendants argue that the *Duncan* case is distinguishable as an exception that was rendered as to a state court suit initiated by the government, not a foreclosure initiated by a private bank. In addition, Defendants note that in *Duncan*, the government was prosecuting the Duncan in an attempt to harass him, and no such allegation of bad faith or harassment was made in the instant suit. Therefore, Defendants argue

that Plaintiff's claims for equitable relief do not fall into an exception created by § 1983 and are barred by the Anti-Injunction Act.

**B. The Shapiro & Daigrepont Defendants' Motion to Dismiss (Rec. Doc. No. 17)**

Defendants Shapiro & Daigrepont, Penny Daigrepont, Claire Mayer, and Eva Simkovitz also contend that Plaintiff fails to state causes of action upon which relief can be granted under any of the statutes she alleges that they violated. In addition, the Shapiro & Daigrepont Defendants argue that this Court lacks jurisdiction to adjudicate Plaintiff's claims related to the ongoing state court proceeding and the claims arising under the Bankruptcy Code. The Court will describe the arguments in turn.

**1. Violation of the Automatic Stay**

The Shapiro & Daigrepont Defendants have moved to dismiss Plaintiff's claim against them for their alleged violation of the automatic stay. First, Defendants assert that Plaintiff's allegations that they violated the automatic stay are conclusory within the meaning of Supreme Court cases *Bell Atlantic Corp v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). As a result, Defendants argue, Plaintiff's pleading is insufficient to support a claim against the Shapiro & Daigrepont Defendants and must be dismissed. Furthermore, Defendants point to Docket Sheet Entry No. 49 of the Roberts Bankruptcy, in which Ms. Roberts sought imposition of actual and punitive damages upon American Bank and opposed American Bank's Motion for Relief from Automatic Stay. Defendants note that Ms. Roberts made no claim against the Shapiro & Daigrepont Defendants, a fact which they argue renders the allegation that they violated the automatic stay implausible.

Second, the Shapiro & Daigrepont Defendants echo the contention of the American

Bank Defendants that this Court lacks subject matter jurisdiction with respect to the alleged violation of the automatic stay. The Defendants argue that such a claim may only be brought in a bankruptcy court, and therefore the instant claim must be dismissed.

Plaintiff responded to the Defendants' first argument, stating that the Defendants have failed to explain how the claim for violation of the automatic stay is "conclusory." Plaintiff points to several paragraphs of her complaint that, she contends, create a sufficient basis for relief. Furthermore, Plaintiff asserts that a recent Fifth Circuit holding, *Turner v. Pleasant*, 2011 WL 5865604 (5th Cir. 2011), supports her argument regarding the adequacy of the complaint.

Regarding Defendants' argument that the claim should be dismissed for lack of subject matter jurisdiction, Plaintiff responds that "[t]he bankruptcy law violations are but a component of the violation of the [FDCPA]." Therefore, she argues, it is proper for this Court to retain jurisdiction of the claim of violation of the automatic stay, as it is merely a segment of a larger claim over which this Court has jurisdiction.

Defendants have filed a reply to Plaintiff's response. In it, Defendants elucidate the meaning of the term "conclusory," explaining that merely alleging harm or a violation of an agreement is a conclusory allegation, impermissible under the precedent set by *Twombly* and *Iqbal*. Furthermore, Defendants argue that this Court can make a "common sense" determination that, had the Shapiro & Daigrepont Defendants actually violated the automatic stay, Plaintiff would have named them in the action she undertook in the bankruptcy court.

**2. Fair Debt Collection Practices Act**

The Shapiro & Daigrepont Defendants have moved to dismiss Plaintiff's claim against them for their alleged violation of the FDCPA. Defendants argue that simple allegations

that they have "violated" and "committed multiple violations" of the FDCPA are conclusory and should therefore be dismissed.

Plaintiff provides the same response to this argument as to Defendants' assertion regarding her claim for violation of the automatic stay, detailed above: Plaintiff denies that her complaint is conclusory and points to specific paragraphs in it, which she contends provide sufficient basis for relief.

### 3. Louisiana Unfair and Deceptive Trade Practices Act

The Shapiro & Daigrepont Defendants have moved to dismiss Plaintiff's claim against them for their alleged violation of LUDTPA. Defendants provide five arguments in support of their motion: (1) the allegations contained in the complaint are conclusory; (2) there is no contractual privity between the Plaintiff and the Shapiro & Daigrepont Defendants ; (3) the "unfair trade practices" prohibited by the statute do not include the Defendants' conduct, which included, as they describe it, "resorting appropriately to judicial process," seeking to enforce a contractual right, and "attempting to collect a debt which is admittedly due and owing"; (4) the Shapiro & Daigrepont Defendants are in an attorney-client relationship with American Bank, and because they did not act outside the scope of their authority, they cannot be held liable to a third party; and (5) Plaintiffs do not allege that the Defendants' purported unfair trade practices caused them a loss, as required in order to recover under LUDTPA.

Plaintiff's Opposition to the Motion did not contain a response to this argument.

### 4. Appointment of a Receiver

The Shapiro & Daigrepont Defendants have moved to dismiss Plaintiff's request for a receivership to supervise the Defendants' activities in order to ensure compliance with TILA, the

FDCPA, and the Bankruptcy Code. First, Defendants argue that the allegations of violations of the FDCPA are conclusory. Second, Defendants argue that Plaintiffs provide no legal support for their statement that a receiver is required to ensure compliance with TILA and the FDCPA. Third, Defendants assert that this Court lacks jurisdiction over a request for receivership, and that the Louisiana Supreme Court is the proper authority. Finally, Defendants note that Plaintiff does not allege TILA violations against the Shapiro & Daigrepont Defendants in the complaint. Furthermore, Defendants argue, their committing such a violation would be impossible, as TILA violations may only be asserted as to the origination of the loan, an event which predates their involvement in this affair.

Plaintiff opposes dismissal of her request. First, Plaintiff states that this Court has broad discretion to appoint a receiver upon a showing of necessity. Plaintiff argues that she has shown the necessity in providing and preserving the property of debtors. Second, Plaintiff contends that the motion for dismissal regarding the request for receivership is premature, as the appointment of a receiver is done later in a case, in aid of a particular remedial outcome.

## 5. Constitutionality of Executory Process

The Shapiro & Daigrepont Defendants have moved to dismiss Plaintiff's claim that the executory process procedure used by the Defendants is unconstitutional. First, citing several Supreme Court and Louisiana state cases, Defendants argue that the constitutionality of the procedure is well-settled. Second, Defendants argue that, although the complaint states that the Defendants acted "under color of the laws of the State of Louisiana," Plaintiff does not assert that Defendants failed to comply with the executory process procedures as set forth in the Louisiana Civil Code. Therefore, Defendants contend that the § 1983 claim that relies on this

"under color of law" allegation should be dismissed.

Plaintiff opposes dismissal of her claim. In response to Defendants' first argument, Plaintiff relies on *Jones v. Flowers*, 547 U.S. 220 (2006), a Supreme Court opinion that held that prior to a taking, due process requires that the government "provide notice, reasonably calculated, under all the circumstances, to apprise interested parties of pendency of action and afford them an opportunity to present their objections." *Id.* at 226. Plaintiff argues that in this context, the notice requirement set by *Jones* exceeds that provided under the executory process procedure, and therefore the procedure must be deemed unconstitutional. Plaintiff also contends that *Jones v. First Bank and Trust Co.*, a recent case decided in this Court that was cited by Defendants, is questionable authority because the opinion did not grapple with the holding of *Jones v. Flowers*.

In response to Defendants' second argument, Plaintiff argues that although the Defendants may have complied with the procedure set by the Louisiana Civil Code, executory process is in itself an unconstitutional remedy. According to Plaintiff, § 1983 gives her the right to redress her constitutional rights when a violation has been effected under state law. Relying on *Jones v. Flowers* and *Zinermon v. Burch*, 494 U.S. 113 (1990), Plaintiff argues that she has standing to file a due process claim in response to Defendants' actions and use of executory process procedure.

Defendants have filed a reply to Plaintiff's response. First, Defendants argue that the *Jones v. Flowers* decision did not involve executory process, but rather a tax sale, and is therefore inapplicable. Relying on *Guillie v. Marine Towing, Inc.*, 670 So. 2d 1298 (La. App. 5 Cir. 1996), Defendants also assert that in order for Plaintiff to have Louisiana's executory

process procedure declared unconstitutional, she must join the Louisiana Attorney General. Finally, Defendants note that they are not state actors and may not be held liable under § 1983 as if they are.

## C. Plaintiff's Motion for Preliminary and Permanent Injunction and Declaratory Relief (Rec. Doc. No. 10)

Plaintiff has filed a motion for a preliminary and permanent injunction against Defendant American Bank, prohibiting and restraining American Bank from proceeding further in its foreclosure action against Plaintiff, now pending in state court. Plaintiff also requests that the injunction require American Bank to cancel, annul, and erase all security interests it purports to hold against Plaintiff arising out of the April 9, 2009, transaction. Finally, Plaintiff requests that the Court issue a declaratory judgment that the obligation between the Bank and Plaintiff, dated April 9, 2009, is null, void, and unenforceable.

As the basis for this request, Plaintiff makes two arguments. First, Plaintiff asserts that the executory process procedure under Articles 1633 through 1644 of the Louisiana Code of Civil Procedure, used by American Bank to foreclose against Plaintiff, violates the Due Process Clause of the Fourteenth Amendment on its face and as applied.

Second, Plaintiff contends that the loan and mortgage created by the April 9, 2009, transaction are null, void, and unenforceable because Plaintiff invoked her right of rescission under § 125 of the Truth-in-Lending Act and cancelled the obligation. Furthermore, Plaintiff argues that she lacked capacity to enter into the transaction in the first place, under Article 1918 of the Louisiana Civil Code.

Defendant American Bank opposes this motion. First, American Bank argues that

Plaintiff's request for a declaratory judgment must be denied because one may not request such relief in a motion. Alternatively, American Bank argues that even if this Court were to construe the motion as a Motion for Summary Judgment, it must be denied because Plaintiff has not shown that there is no genuine issue of material fact.

Regarding the Plaintiff's request for a permanent injunction, American Bank argues that it must be denied because one cannot obtain permanent injunctive relief without actual success on the merits. Second, American Bank argues that all of Plaintiff's claims for injunctive relief are barred by the Anti-Injunction Act. Finally, American Bank argues that Plaintiff does not establish the four requirements necessary to prevail on a preliminary injunction request.

## III. LAW AND ANALYSIS

### A. Standard of Review for Motions to Dismiss Pursuant to Rule 12(b)(1) and 12(b)(6)

In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), the party asserting subject matter jurisdiction bears the burden of proof. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "A Rule 12(b)(1) motion should be granted only if it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject-matter jurisdiction." *Davis v. United States*, 597 F.3d 646, 649 (5th Cir. 2009) (quotation omitted). The Court may decide the jurisdictional question based on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996) (citations omitted). If the Court resolves disputed facts to decide if it has jurisdiction, "no presumptive truthfulness attaches to the plaintiff's allegations." *Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir.

2004).

In considering a motion to dismiss under Rule 12(b)(6), the Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). However, a pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Therefore, to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "This requirement holds true even for pro se litigants." *Roque v. Jazz Casino Co. LLC*, 2010 WL 2930876, at *3 (5th Cir. July 22, 2010).

**B. Analysis**

### 1. Truth-in-Lending Act claim

Plaintiff alleges that American Bank failed to properly disclose Plaintiff's right to rescind the mortgage transaction into which she entered on April 9, 2009. The mortgage at issue was transacted in order to finance Plaintiff's home in Ponchatoula, Louisiana. As Plaintiff concedes, "residential mortgage transactions" are excluded from the right of rescission that TILA created. 15 U.S.C. § 1635(e). Nevertheless, Plaintiff attempts to circumvent this exclusion with complicated reasoning and tenuous analogies, and it is this argument to which the Court will now turn.

The exception for "residential mortgage transactions" is subject to an exception itself, created by the Federal Reserve Board's Staff Commentary on the regulations implementing

TILA. As Plaintiff states, the regulations state that a residential mortgage transaction "does not include a transaction involving a consumer's principal dwelling if the consumer had previously purchased or acquired some interest to the dwelling." 12 C.F.R. pt. 226, Supp. I. Plaintiff claims that this provision applies to the instant case, arguing that the $1000 down payment to the realty firm made Plaintiff an equitable owner of the property, and therefore when the loan was closed, she was purchasing a dwelling of which she had previously acquired some interest.

Despite its fancy footwork, this argument cannot withstand scrutiny. First of all, the down payment paid by Plaintiff just weeks before the loan closed was not a separate transaction that one could consider a "previous" acquisition of partial ownership. In truth, the down payment and the finalization of financing were all components of single transaction: the purchase of Plaintiff's home. Although Plaintiff attempts to obfuscate this truth by deeming the $1000 check an "escrow payment," functionally it is not distinct from the loan closing that took place less than seven weeks later.

As Defendant American Bank notes, to conclude otherwise would be to warp Congress's intent to exempt residential mortgages from the right to rescission. Considering the frequency of down payments as part of mortgage transactions, if this Court held that such a payment created a previous interest in the dwellings they finance, the exception would swallow the rule, and nearly every mortgage transaction would be subject to a right to rescission. Clearly this result was not the intended purpose of the provisions of TILA.

Further support for this conclusion can be found in the same document cited by Plaintiff: the official staff commentary on the implementing regulations. Directly following the passage creating the "exception to the exception" that Plaintiff claims is supportive of her

argument are two examples of such a transaction. They are a "financing of a balloon payment due under a land sale contract" and an "extension of credit made to a joint owner of property to buy out the other joint owner's interest." 12 C.F.R. pt. 226, Supp. I. Taking these examples as illustrative of the intended meaning of a dwelling in which one has "previously purchased or acquired some interest," it is clear that the Federal Reserve Board did not contemplate a nominal down payment made on a house just weeks before loan closing. On the contrary, the Federal Reserve Board intended to capture those transactions in which the buyer had previously acquired some significant interest in a transaction formally and functionally distinct from the purchase. As a result, Plaintiff's purchase of her home cannot fall into the exception to the "residential mortgage transaction" definition. Thus, Plaintiff's transaction was not subject to the right to rescission created by TILA. Because Plaintiff did not have a right to rescind the mortgage under TILA, American Bank did not violate Plaintiff's right by not canceling her mortgage or returning any monies paid. In sum, Plaintiff has failed to state a claim under the statute, and American Bank's motion to dismiss Plaintiff's claims under the Truth-in-Lending Act must be granted.[1]

### 2. Fair Debt Collection Practices Act claim

Both the American Bank Defendants and the Shapiro & Daigrepont Defendants have filed motions to dismiss Plaintiff's claims under the FDCPA. The Court will address the Defendants' motions in turn.

### a. American Bank Defendants

The American Bank Defendants have moved to dismiss Plaintiff's claim under the

---

[1]Because the Motion to Dismiss Plaintiff's claim under the TILA may be granted based on the lack of a right to rescind, this Court need not reach Defendant's argument that the claim should be dismissed because the claim is prescribed and time barred.

FDCPA, arguing that the statute exempts both banks and their employees and that the one-year statute of limitations renders Plaintiff's claim time-barred.

The FDCPA prohibits debt collectors' use of unfair practices, including threats and harassment. "Debt collectors" is a term of art that is defined within the statute as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due another." 15 U.S.C. § 1692a(6). This court, as well as others, have held that the term "debt collector" does not refer to banks . *See Thomasson v. Bank One, Louisiana, N.A.*, 137 F.Supp. 2d 721, 723 (E.D. La. 2001) (holding that bank was a "debt collector" under the FDCPA because bank was collecting debt owned directly to it and bank's primary purpose was to loan money to consumers, not collection of outstanding debts); *see also Montgomery v. Huntington Bank*, 346 F.3d 693 (6th Cir. 2003); *Robertson v. GE Consumer Finance, Inc.*, 2008 WL 4868289 *3 (S.D. Miss. 2008). Accordingly, American Bank cannot be held liable under the FDCPA, and Plaintiff's claim against it under this statute must be dismissed.

Plaintiff's claim against Ms. Kinchen may also be easily disposed of. Plaintiff alleges that Ms. Kinchen is liable under the FDCPA for her participation in the foreclosure process as an employee of American Bank. Section 1692a(6)(A) of the statute exempts "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor." 15 U.S.C. § 1692a(6)(A). Clearly, this provision includes Ms. Kinchen acting in her role as a bank employee. Therefore, Ms. Kinchen cannot be held liable under the FDCPA, and Plaintiff's claim

against her under the statute must be dismissed.[2]

**b. Shapiro & Daigrepont Defendants**

The Shapiro & Daigrepont Defendants have also moved to dismiss Plaintiff's claim under the FDCPA, arguing that Plaintiff's allegations that provide the basis of the claim are conclusory.

In reviewing the complaint, this Court takes the factual allegations of the complaint as true, and draws all reasonable inferences, and resolves ambiguities, in the plaintiff's favor. *See Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009); *see also Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir.1993). Bare recitals of the elements of a cause of action, supported by mere conclusory statements, will not suffice to either obtain, or prevent, dismissal for failure to state a claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Under *Iqbal-Twombly*'s two-pronged approach, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1948-49; *Twombly*, 550 U.S. at 555. The first step for the Court is to determine those pleadings that are more than just "mere conclusions" and thus are entitled to the presumption of truth. *Iqbal*, 129 S. Ct. at 1949–50. Then, assuming the veracity of these facts, the Court must determine whether the factual content "allows the court to draw the

---

[2]Because the Motion to Dismiss Plaintiff's claim under the FDCPA may be granted based on the exemption provided for banks and their employees, this Court need not reach Defendant's argument that the claim should be dismissed because the claim is prescribed and time barred.

reasonable inference that the defendant is liable for the misconduct alleged" and "plausibly give[s] rise to an entitlement to relief." *Id.*; *see also Rhodes v. Prince*, 360 F. App'x 555, 557 (5th Cir. 2010). If the pleadings fail to meet the requirements of *Iqbal* and *Twombly*, no viable claim is stated, and the pleading is subject to dismissal.

In the instant case, Plaintiff alleges that Defendants violated 15 U.S.C. §§ 1692b(3), (6); 1692c(a)(2), (c); 1692e(5), (10); 1692f; and 1692g of the FDCPA. In support of this assertion, Plaintiff alleges that the Shapiro & Daigrepont Defendants "[sent] [Plaintiff] harassing letters threatening foreclosure," and "relentlessly call[ed] . . . [Plaintiff] with threats of foreclosure and a deficiency judgment." Pl's. Compl. 8-9. Furthermore, Plaintiff asserts that the Shapiro & Daigrepont Defendants specialize in collection law. Pl's. Compl. 10-11.

Section 1692b(3) and (6) prohibits a "debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer" from communicating with such person more than once unless except in certain circumstances, and from communicating with anyone other than the consumer's attorney once the debt collector is aware that the consumer has representation. *See id.* § 1692b(3), (6).

Section 1692c(a)(2) prohibits communication with the consumer when the debt collector knows the consumer is represented by an attorney with the respect to such debt, without prior consent of the consumer. Section 1692c(c) prohibits communication with a consumer if the consumer has notified the debt collector in writing that the consumer refuses to pay a debt or that consumer wishes to cease communication.

Section 1692e(5) prohibits debt collectors from threatening that "any action that cannot be taken or that is not intended to be taken." Section 1692e(10) prohibits the use of any

false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

Section 1692f prohibits debt collectors from using unfair or unconscionable means to collect or attempt to collect any debt. The section lists examples of such conduct, including collecting any amount unless such amount is expressly authorized by the agreement, and depositing any postdated check prior to the date on such check.

Section 1692g sets out requirements of debt collectors regarding notice of debt and communication with a consumer who disputes the validity of said debt.

In the instant case, drawing all reasonable inferences in favor of Plaintiff, several of the provisions that Plaintiff alleges have been violated do find sufficient support in Plaintiff's Complaint. Sections 1692c(c), 1692e(5), 1692f, and 1692g all create prohibitions and standards that could plausibly give rise to an entitlement to relief based on Plaintiff's Complaint. Therefore, this Court finds that further discovery is warranted with respect to these allegations, and the Shapiro & Daigrepont Defendants' Motion to Dismiss these claims must be denied.

Sections 1692b(3) and (6), 1692c(a)(2), and 1963e(10) however, present a different story. These provisions prohibit the debt collector from speaking with a person other than the consumer in certain circumstances, from communication with the consumer when it knows that he or she is represented by an attorney, and from using false representation or deceptive means to collect a debt. Nowhere in Plaintiff's Complaint does she assert that the Shapiro & Daigrepont Defendants communicated with anyone other than her, or that the Shapiro & Daigrepont Defendants continued communication with her despite notification that she had acquired representation for the matter. Finally, Plaintiff does not allege that the Shapiro & Daigrepont

Defendants were deceptive in their attempts to collect the debt; to the contrary, Plaintiff alleges that the Defendants were *too* forward and forthcoming with their communications regarding the debt. As central aspects of a claim under these sections, these factual allegations must be present for this Court to allow these claims to proceed. As such, this Court must grant the Shapiro & Daigrepont Defendants' Motion to Dismiss Plaintiff's claims under 15 U.S.C. §§ 1692b(3), (6), 1692c(a)(2), and 1692e(10). If Plaintiff is able to plead sufficient facts to sustain these claims, she may do so by filing an amended complaint.

### 3. Lack of capacity under the Louisiana Civil Code

Plaintiff alleges that she had a right to rescind the mortgage contract under Article 1918 of the Louisiana Civil Code. Article 1918 states, "All persons have capacity to contract, except unemancipated minors, interdicts, and persons deprived of reason at the time of contracting." This general rule that all persons have capacity is subject to some exceptions, and the meaning of "persons deprived of reason" has been clarified by cases such as those cited in Official Comment (b) to the article. Examples of what constitutes a deprivation of reason include insanity, *Succession of Schmidt*, 53 So. 2d 834 (1951), habitual drunkenness, *Interdiction of Gasquet*, 68 So. 89 (1915), and senility, *Smith v. Blum*, 143 So. 2d 419 (La. App. 4 Cir. 1962).

Plaintiff asserts that she was deprived of reasoning due to her limited education and lack of experience in business and finance, in addition to American Bank's lack of sufficient explication of the provisions of the mortgage. In support of her assertion, Plaintiff relies on another case, one not noted in the Official Comment: *Succession of Molaison*, 34 So. 2d 897 (1947). In *Molaison*, the plaintiff had been induced by the residuary legatee-executrix of an estate to renounce her claim to one-third of a $225,000 estate in exchange for a $5,000 legacy.

The plaintiff was suffering from an advance stage of diabetes and, although educated, was described as not very bright. In annulling the renunciation, the court stated that "it is the duty of the courts to carefully and painstakingly investigate the circumstances surrounding transactions between a person of limited mental capacity and one experienced in business affairs, in order that substantial justice might be meted out." *Id.* at 903. According to Plaintiff, this holding supports her argument that, due to her lack of experience in financial affairs, she lacked capacity to enter into the mortgage, and therefore the transaction is null, void, and unenforceable.

The holding in *Molaison* seems anomalous and appears to find no support in other cases. For example, in the case cited by Defendants in their briefs, *Banks v. Johns*, the Louisiana Court of Appeal stated that the holding of *Molaison* "should be . . . restricted to its facts." 289 So. 2d 194, 198 (La. App. 1 Cir. 1973). The court explained that *Molaison* "stands alone in our jurisprudence" and "cited no authority for the principle of law on which it relied in setting aside the act." *Id.* Indeed, since *Molaison*, the holding has only been cited by one other case, *Higgins v. Spencer*, 531 So. 2d 768 (La. App. 1 Cir. 1988).

Aside from the dubious precedential value, the facts of the case are inapposite here. The Plaintiff in *Molaison* was not simply unfamiliar with business and financial affairs, but described as "undoubtedly a woman of limited mental capacity" and "obtuse." *Molaison*, 34 So. 2d at 902. Furthermore, she was suffering from an untreated case of diabetes, which the court notes may have contributed to her mental capacity. *See id.* Similarly, the plaintiff in the only case to follow this holding of *Molaison* was "mentally retarded," "unable to read or write," and "had the mentality of a 5 or 6 year old child." *Higgins*, 531 So. 2d at 771. Plaintiff argues that *Molaison* and *Higgins* stand for the proposition that a person of limited education and lack of

business experience who claims to not understand the nature of a contract lacks legal capacity to enter into it. Clearly, this far-fetched argument is incorrect. Plaintiff does not allege that she has severe mental disabilities and that these prohibited her from comprehending the nature of the transaction. The *Molaison* reasoning, whatever value it retains, does not apply here.

And nor should it. To hold that any person who lacks "experience in business and finance" may have a transaction declared null and void would undermine the integrity of contracts within the State of Louisiana. Nearly every person who enters into a mortgage is less experienced in financial affairs than the bank with which they are contracting, and to use the holding of *Molaison* to determine that this inequality allows courts to disturb every mortgage and investigate the circumstances surrounding it would create chaos.

In sum, the authorities cited by Plaintiff are of dubious precedential value, inapposite, and would have an absurd effect on the right to contract. Therefore this Court must grant Defendants' Motion to Dismiss Plaintiff's claim under the Louisiana Civil Code.

### 4. Louisiana Unfair and Deceptive Trade Practices Act claim

Both the American Bank Defendants and the Shapiro & Daigrepont Defendants have filed motions to dismiss Plaintiff's claims of violations of the automatic stay. Because the LUDTPA claims against both groups of defendants may be dismissed on the same grounds, the Court will address the Defendants' motions as one.

LUDTPA makes unlawful any "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." La. Rev. Stat. Ann. 51: 1405(A). Private actions under the statute are prescribed by one year, beginning from the time of the transaction or act that gives rise to the claim. *Id.* at 1409(E).

In the instant case, Plaintiff filed her claim on August 19, 2011. Plaintiff alleges in the complaint that the acts that give rise to the LUDTPA claims took place from April 9, 2009, when the loan and mortgage were executed, through June 20, 2011, encompassing the period of time during which the Defendants allegedly violated the Fair Debt Collection Practices and the automatic stay imposed by the bankruptcy filing. Pl's. Compl. 18. If the Court finds that the only conduct that can support the violation occurred at the time of the transaction, on April 9, 2009, then the LUDTPA claim is time-barred. In effect, Plaintiff is attempting to obfuscate the possibility that the claim is time-barred by asserting that Defendants' alleged violations of the FDCPA and the automatic stay, which allegedly occurred during 2010 and 2011, constitute violations of the LUDTPA. This argument cannot stand. The Fifth Circuit has explained that the purpose of LUDTPA is to prohibit unfair commercial acts that undermine competition. *See Omnitch Intern., Inc. v. Clorox Co.*, 11 F.3d 1316, 1331 (5th Cir. 1004) ("The real thrust of the LUTPA . . . is to deter injury to competition."). "To recover under LUDTPA, a plaintiff must prove fraud, misrepresentation, or other unethical conduct." *Computer Mgmt. Assistant Co. v. Robert F. DeCastro, Inc.*, 220 F.3d 396, 414 (5th Cir. 2000); *see also Jefferson v. Chevron U.S.A., Inc.*, 713 So.2d 785, 792 (La. Ct. App. 1998) (explaining that a trade practice is deceptive when it amounts to "fraud, deceit, or misrepresentation").

In this case, the conduct that Plaintiff alleges constitutes violations of FDCPA and the automatic stay are not fraudulent or deceitful. Plaintiff's allegations regarding the specific violations of the FDCPA are unclear, but one can infer that Plaintiff intends to allege that the Defendants violated the FDCPA by engaging in prohibited communication with them and by breaching notice requirements. Similarly, Plaintiff alleges that Defendants violated the automatic

stay by continuing to contact her regarding the foreclosure after she filed for bankruptcy. Clearly, there is nothing fraudulent or anticompetitive about this allegation. Accordingly, because Plaintiff's claims under the automatic stay and the FDCPA do not constitute violations of LUDTPA, this Court must find that they do not constitute "acts" that would bring Plaintiff's LUDTPA claim within the statute of limitations.

The Court will now sift through the remaining allegations under LUDTPA in order to determine if any aspects of this claim fall within the one-year statute of limitations. First, Plaintiff alleges that Defendants violated LUDTPA by seeking foreclosure where there was no right to do so. Pl's. Compl. 11. Whether or not wrongfully seeking a foreclosure may have been mentioned, in dicta, as in violation of another state's deceptive trade practices statute, *see, e.g.*, *Flenniken v. Longview Bank and Trust Co.*, 661 S.W. 2d 705 (Tex. 1983), and whether or not that state's interpretation of its own law is persuasive to this Court, such conduct did not occur in this case. As detailed above, Plaintiff had no right to rescind the mortgage under either the Truth-in-Lending Act or the Louisiana Civil Code, and therefore the foreclosure was not wrongful.

In her complaint, Plaintiff also alleges that when American Bank, through the Shapiro & Daigrepont Defendants, filed the action for foreclosure, she was never served with process. A defective foreclosure notice has previously provided the basis for a violation of a state's deceptive trade practices statute. *See In re Smith*, 866 F.2d 576 (3d Cir. 1989). Again putting aside the question of the applicability of another state's interpretation of its own law, this case is distinguishable. In *Smith*, the circuit court reversed a district court's ruling that improper service of process was not "deceptive, misleading, or fraudulent." The court explained, however, that it was not simply the improper service that formed the basis of its opinion, but also the fact that

after the mortgagor informed the bank of her indefinite stay overseas, and less than thirty days prior to the commencement of the foreclosure action, the bank had corresponded with the mortgagor at her new address abroad. This, the court stated, "misled or lulled Smith into a false sense of reliance, ultimately permitting [the bank] to obtain a default judgment and to foreclose on the property." *Id.* at 584. In fact, it was the correspondence to her new address, followed by the service of process on her old address, that constituted the "misleading" act that violated the statute.

In the instant case, Plaintiff alleges no such misleading act in conjunction with the allegedly improper service of process. Instead, the complaint simply alleges that she had never been served with process and received only a "Notice of Seizure." While this deficiency may create other procedural issues in the foreclosure suit itself, it does not give rise to a cause of action under LUDTPA.

In sum, the Court finds all of Plaintiff's allegations under LUDTPA either are time-barred or relate to conduct that does not constitute a violation of the statute. Therefore, Plaintiff's claim under LUDTPA against both the American Bank Defendants and the Shapiro & Daigrepont Defendants must be dismissed.[3]

**5. Injunctive relief**

Both the American Bank Defendants and the Shapiro & Daigrepont Defendants have filed motions to dismiss Plaintiff's requests for injunctive relief.

The American Bank Defendants have moved to dismiss Plaintiff's requests for (1) a

---

[3] Because the Motion to Dismiss Plaintiff's claim under LUDTPA may be granted based on the statute of limitations argument, this Court need not reach Defendants' various other arguments, described above.

preliminary and permanent injunction against the state court foreclosure proceedings, (2) a receivership for all monies given to Defendants by Plaintiff in connection with the April 9, 2009, transaction, and (3) an order that American Bank render an accounting for all monies received from Plaintiff in connection with the April 9, 2009, transaction. The American Bank Defendants contend that such injunctive actions are barred by the Anti-Injunction Act and the *Colorado River* abstention doctrine. The Shapiro & Daigrepont Defendants have moved to dismiss Plaintiff's request for a receivership, the only form of injunctive relief asserted against them in Plaintiff's Complaint. *See* Pl's. Compl. 17-18. Because both groups of Defendants have moved to dismiss the request for a receivership on the same grounds, the Court will address their Motions as one.

      **a. Preliminary and permanent injunction**

      The Anti-Injunction Act, 28 U.S.C. § 2283, prohibits the granting of injunctions to stay state court proceedings, except where expressly authorized by federal statute, or where necessary in aid of the federal court's jurisdiction or to protect or effectuate its judgment. None of these exceptions is applicable here. When applicable, the section "is absolute, that is, it leaves no discretion in the court." *First Nat. Bank & Trust Co. of Racine v. Village of Skokie*, 173 F.2d 1, 4 (7th Cir. 1949). In *Nixon v. Individual Head of St. Joseph Mortg. Co., Inc.*, the district court held that it did not have the power to enjoin state court mortgage foreclosure proceedings, and therefore dismissed the case for lack of jurisdiction. 612 F.Supp. 253, 255 (D.C. Ind. 1985); *see also Ungar v. Mandell*, 471 F.2d 1163, 1165 (2d Cir. 1972).

      In sum, it is clear that, if applicable, Anti-Injunction Act prohibits this Court from granting an injunction of the ongoing foreclosure proceeding in state court. Plaintiff argues,

31

however, that § 2283 is not appropriate for this case, as she has filed for injunctive relief under 42 U.S.C. § 1983, and that actions for injunctive relief against state courts are not barred under that statute. Plaintiff relies on the Supreme Court opinion in *Mitchum v. Foster* to support her assertion that this Court may intervene in the state court action because it allegedly violates substantive and procedural due process.

In this instance, Plaintiff is correct. Section 1983 expressly authorizes a "suit in equity" to redress "the deprivation" under color of state law, "of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. The Court in *Mitchum* was faced with the question of whether § 1983 came within the "expressly authorized" exception to the Anti-Injunction Act, in which case a court would be permitted to grant an injunction to stay a state court proceeding. *Mitchum v. Foster*, 407 U.S. 225, 226 (1972). The Court held that suits under § 1983 were intended to come within the exception to the bar against injunctions of state court proceedings, and therefore a plaintiff who files suit in federal court under that section may not have his or her suit dismissed due under the Anti-Injunction Act. *See, e.g.*, *Bank of New York Mellon v. Smith*, 71 So. 3d 1034 (La. App. 3 Cir. 2011).

In the instant suit, Plaintiff claims in her response to the Motion to Dismiss that she has filed for the preliminary and permanent injunctions under § 1983. As a basis for this claim, she argues that the executory process procedure used by the Defendants, as well as the "confession of judgment," violate her right to due process. As a result, although Plaintiff's claims under § 1983 are questionable, such a claim is not barred by the Anti-Injunction Act. As a result, Defendants' Motion to Dismiss Plaintiff's request for injunctions is denied, and the Court will assess the merits of Plaintiff's Motion for a Preliminary and Permanent Injunction below.

### b. Receivership and accounting

Defendants argue that the remaining requests for injunctive relief, namely the requests for receivership and accounting, must be dismissed because they are related to the state court foreclosure proceeding, which has not yet come to final judgment, pursuant to *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). Under *Colorado River*, federal district courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Id.* at 817. However, *Colorado River* also created an abstention doctrine by which they may abstain from hearing cases under "exceptional circumstances where the order to the parties to repair to state court would clearly serve an important countervailing interest." *Id.* at 813 (internal quotations omitted). The opinion created general categories when abstention would be appropriate, including one concerned with "contemporaneous exercise of concurrent jurisdictions, either by federal courts or by federal and state courts." *Id.* at 817. Specifically, the Supreme Court held that abstention might be proper out of respect for "considerations of [w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.* (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183 (1952)). In order to determine whether circumstances permit dismissal of a federal claim due to the presence of a concurrent state proceeding for reasons of wise judicial administration, the "threshold issue" is whether the two actions are "parallel." *St. Clair v. Wertzberger*, 637 F.Supp. 2d 251, 255 (D.N.J. 2009). "[P]arallel cases involve the same parties and 'substantially identical' claims, raising 'nearly identical allegations and issues.'" *Id.* (citing *IFC Interconsult, AG v. Safeguard Intern. Partners, LLC.*, 438 F.3d 298, 306 (3d Cir. 2006). Furthermore, the Court created a set of six factors, most concisely stated in *St. Clair*: "(1) which

court first assumed jurisdiction over a relevant *res*, if any; (2) whether the federal court is inconvenient; (3) whether abstention would aid in avoiding piecemeal litigation; (4) which court first obtained jurisdiction; (5) whether federal or state law applies; and (6) whether the state action is sufficient to protect the federal plaintiff's rights." *Id.*; *see also Colorado River*, 424 U.S. at 818-19.

Although this Court recognizes the validity of the *Colorado River* doctrine, the Fifth Circuit has demonstrated the high bar it has set for abstention by a district court. *See Kelly Inv., Inc. v. Continental Common Corp.*, 315 F.3d 494 (5th Cir. 2002). In *Kelly*, the Fifth Circuit reviewed a district court's decision to abstain from exercising its jurisdiction in a controversy regarding promissory notes while another, similar suit was pending in Texas state court. In abstaining from the case, the district court had found several of the *Colorado River* factors, including that the federal court in Louisiana was an inconvenient forum, that piecemeal litigation would result if concurrent proceedings were permitted, and that the Texas proceeding had progressed further. *Id.* at 498. Still, the Fifth Circuit reversed the decision, reiterating that abstention is only proper under "exceptional circumstances." *Id.* at 497. The court went on to explain that the decision to abstain must not be the result of a simple checklist of factors, but requires fastidious balancing of them, "with the balance heavily weighted in favor of the exercise of jurisdiction." *Id.* at 498 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)). In the end, the Court concluded that the litigation was "merely duplicative," and that *res judicata* would ensure proper order of any irreconcilable rulings. *Id.* at 499.

In light of the high standard for abstention in the Fifth Circuit, and the lack of "exceptional circumstances" in this case, the Court will not use the *Colorado River* doctrine to

decline to stay these proceedings for equitable relief in favor of those pending in state court. This conclusion does not mean, however, that Plaintiff's requests for a receivership and an accounting have been, or will be, granted. A receivership is a remedy that the Court has the power to order when such relief is warranted. *See, e.g.*, *Santibanez v. Weir McMahon & Co.*, 105 F.3d 234, 241 (5th Cir. 1997) ("[T]he District Court had the power to appoint a receiver to take possession of the judgment debtor's property for preservation under Federal Rule of Civil Procedure 66."). Appointment of a receiver is a "drastic remedy" and is in the "sound discretion of the court." *Id.* Factors that courts have considered as indicating the need for a receivership include "a valid claim by the party seeking the appointment." *Id.* In this case, Plaintiff has requested the equitable relief "in view of [Shapiro & Daigrepont Defendants'] repeated violations of the Truth-in-Lending Act, the Bankruptcy Code and the Fair Debt Collection Practices Act," Pl.'s Compl. 18. As discussed above, it has not yet been determined that any such violations occurred, and in fact, the Court has dismissed all but a few of the FDCPA claims against the Shapiro & Daigrepont Defendants. As such, although the Court will not dismiss the requests for receivership entirely based on the *Colorado River* abstention doctrine, no such relief will be granted until Plaintiff establishes that she has a valid claim under the FDCPA, and that the "drastic remedy" of a receivership is warranted.

Similarly, an accounting is a form of equitable relief that a court may grant in aid of judgment. *See Vogt v. Bd. of Levee Com'rs of Orleans Levee Dist.*, 680 So. 2d 149, 157 (La. App. 4 Cir. 1996) ("'Accounting' has been defined as an act or system of making up or settling accounts or a rendition of an account. If by order of a court, it imports a rendition of a judgment for the balance due."). In the instant case, no such judgment has been rendered, and Plaintiff has

not yet established the basis for her request. As such, the Court will not dismiss the request for an accounting but will reserve ruling on it until a later date.

### 6. Violation of the Automatic Stay

Both the American Bank Defendants and the Shapiro & Daigrepont Defendants have filed motions to dismiss Plaintiff's claims of violations of the automatic stay. The Court will address the Defendants' motions in turn.

### a. American Bank Defendants

The American Bank Defendants have moved to dismiss Plaintiff's claims of violation of the automatic stay, arguing that this Court lacks jurisdiction to hear the claim and that Plaintiff fails to state a claim upon which relief can be granted.

The United States Bankruptcy Code provides a comprehensive federal system for the management of debtor's affairs and creditors' rights. *See* 11 U.S.C. § 101, *et seq*. Within the arrangement, the code provides for an automatic stay for state proceedings against the debtor. *See* 11 U.S.C. § 362. In the instant case, Plaintiff seeks damages under state law in a district court for alleged violations of the automatic stay provision of the Bankruptcy Code.

Several courts have already examined this question, and currently there is a circuit split on the issue. The Second Circuit has affirmed dismissal of such cases brought in district courts, determining that the "[F]ederal Bankruptcy Code preempts any state law claims for a violation of the automatic stay, and precludes jurisdiction in the district courts. Any relief for a violation of [an automatic] stay must be sought in the Bankruptcy Court." *Eastern Equipment and Services Corp. v. Factory Point Nat'l Bank, Bennington*, 236 F.3d 117, 121 (2d Cir. 2010). Meanwhile, however, the Eleventh Circuit has held that district courts do have jurisdiction over

such claims by virtue of the grant of original jurisdiction over Title 11 cases found in 28 U.S.C. § 1331 and 1334. *See Justice Cometh, Ltd. v. Lambert*, 426 F.3d 1342, 1343 (11th Cir. 2005).

Section 1334(b) of Title 28 explicitly states that district courts have "original but not exclusive" jurisdiction of all civil proceedings arising under the Bankruptcy Code, notwithstanding any Act of Congress. 28 U.S.C. § 1334(b). The Eleventh Circuit interpreted this grant of jurisdiction in conjunction with the Bankruptcy Code to mean that the district courts *may* refer cases arising under title 11 to bankruptcy courts for their districts, but that they do not lack subject matter jurisdiction to adjudicate those claims themselves. *See Justice Cometh*, 426 F.3d at 1343. Tellingly, this grant of jurisdiction was not discussed in the Second Circuit decision that district courts may not adjudicate claims of violations of an automatic stay. Accordingly, this Court finds the *Justice Cometh* decision more persuasive and holds that it does not lack subject matter jurisdiction over the claim of violation of the automatic stay.

Defendants also move to dismiss the claim for violation of the automatic stay on the basis that Plaintiff fails to state a claim upon which relief can be granted. Title 11 U.S.C. § 362. Defendants argue that Plaintiff has asked for damages as a remedy for the automatic stay violation, and that a "monetary penalty" may not be imposed on a creditor under § 362(k) unless the conduct that is the basis for the violation occurs after the creditor has received effective notice of the stay. *See* 11 U.S.C. § 342(g)(2). Defendants argue that because no such allegation has been made by Plaintiff, she has failed to state a claim.

Although Defendants correctly state the requirement set by § 342(g)(2), they overstate the pleading requirements under it. In order for the Court to grant Defendants' motion to dismiss, it must find Plaintiff's claim that the automatic stay was violated "implausible."

Although Plaintiff has not specifically stated that such violative conduct occurred after the notice was served upon the Defendants, the Court finds that there is more than a "sheer possibility" that the conduct may have violated the stay, and that discovery is warranted in order to determine if this is the case. As a result, the Court must deny the motion to dismiss the claim for violation of the automatic stay. If, after sufficient discovery is conducted, the Defendants can establish that there is no issue of material fact regarding the notice requirement, they may file a motion for summary judgment on the issue.

### b. Shapiro & Daigrepont Defendants

The Shapiro & Daigrepont Defendants have also moved to dismiss Plaintiff's claim for violation of the automatic stay, arguing that the allegations are "conclusory" and that because Plaintiff did not file such a claim against them in the bankruptcy court, it is implausible that the Shapiro & Daigrepont Defendants actually violated the stay.

Regarding the Defendants' first argument, it would be a stretch to deem the Plaintiff's allegations "conclusory." Plaintiff alleges that an automatic stay was imposed when she filed for bankruptcy and, despite this fact, the Shapiro & Daigrepont Defendants continued to threaten foreclosure. These allegations are sufficient to constitute a pleading under Federal Rule of Procedure 8, and the Court declines to dismiss the claim on these grounds.

Secondly, this Court will not dismiss an action against a defendant simply because the plaintiff did not file against them in a different court. The Court recognizes that a multitude of factors may go into the decision to initiate a legal proceeding, and therefore it will not end an action in this forum based on decisions made in another. As a result, the Court declines to dismiss the automatic stay claim against the Shapiro & Daigrepont Defendants on these grounds.

In sum, the Court denies the Shapiro & Daigrepont Defendants' motion to dismiss the claim for violation of the automatic stay.

**C. Standard of Review for Motions for Preliminary and Permanent Injunctions**

In the Fifth Circuit, a party must establish the following to be entitled to a preliminary injunction:

> (1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to the defendant, and (4) that granting the preliminary injunction will not disserve the public interest.

*Kennedy v. Potter*, 344 Fed. App'x 987 (5th Cir. 2009) (quoting *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974)); *accord Bluefield Water Ass'n, Inc. v. City of Starkville*, 577 F.3d 250, 252–53 (5th Cir. 2009). "A preliminary injunction is an extraordinary and drastic remedy." *Id.* "The party with the burden must clearly carry the burden of persuasion." *Id.*

**D. Analysis**

**1. Preliminary and permanent injunction**

Plaintiff has moved for a preliminary and permanent injunction against Defendant American Bank, prohibiting and restraining American Bank from proceeding further in its foreclosure action against Plaintiff, now pending in state court. Plaintiff also requests that the injunction require American Bank to cancel, annul, and erase all security interests it purports to hold against Plaintiff arising out of the April 9, 2009, transaction.

The Supreme Court has described the preliminary injunction as "an extraordinary remedy never awarded as of right." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to

succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20.

Although the Supreme Court has created a four-part test for plaintiffs requesting a preliminary injunction, in the instant case, the Court need only review the first part in order to dispose of the motion: the requirement that Plaintiff establish that she is likely to succeed on the merits. This element would require that Plaintiff establish one of her two arguments in support of her motion for a permanent injunction — either that the April 9, 2009, transaction is null, void, and unenforceable or that the executory process procedure used by American Bank to foreclose on the property is unconstitutional.

With regard to Plaintiff's first argument, as the Court concluded in deciding the American Bank Defendants' Motion to Dismiss, above, Plaintiff had no right to rescission under the Truth-in-Lending Act. Therefore, Plaintiff could not have canceled the April 9, 2009, contract by invoking such a right. Furthermore, Plaintiff did not lack capacity under Article 1918 of the Louisiana Civil Code, as the Court also determined in the above discussion of the American Bank Defendants' Motion to Dismiss. In sum, neither the loan nor the mortgage are null, void, and unenforceable, as argued by Plaintiff. As a result, Plaintiff is quite unlikely to succeed on the merits with this argument.

Plaintiff's second argument in support of the injunction is that the executory process procedure used by American Bank to foreclose on the mortgaged property violated her right to Due Process under the Fourteenth Amendment. In support of this assertion, Plaintiff cites the Supreme Court decision in *Jones v. Flowers*, 547 U.S. 200 (2006). Plaintiff argues that *Jones*

and its progeny establish that the notice of seizure and sale provided to a defendant in a foreclosure proceeding are not sufficient to meet the bar set by the Due Process Clause of the Fourteenth Amendment.

Despite Plaintiff's attempts to persuade otherwise, it is well-settled that executory process, as well as the confession of judgment it is based upon, is constitutional. *See, e.g.*, *Mitchell v. W.T. Grant Co.*, 416 U.S. 600 (1974) (upholding the constitutionality of Louisiana's executory process statutes); *Buckner v. Carmack*, 272 So.2d 326 (La. 1973) (holding that executory process is constitutional, despite defendant's attacks on the notice provided and the confession of judgment); *see also Fuentes v. Shevin*, 407 U.S. 67 (1972) (upholding the analogous Florida and Pennsylvania "replevin" statutes).

In spite of this clear precedent, Plaintiff continues to argue that executory process procedure is unconstitutional, contending that these long-settled decisions did not grapple with the 2006 holding of *Jones v. Flowers*. But *Jones* does not upset the precedent as Plaintiff would like to believe. In *Jones*, the Supreme Court was faced with a tax sale proceeding in which the certified letters mailed as notice to the homeowner were returned "unclaimed." *Jones*, 547 U.S. at 223-24. The home was sold, and Jones filed suit, alleging that the proceeding violated his due process rights by failing to provide him with adequate notice of the sale. *Id.* at 224-25. In its decision holding the procedure unconstitutional, the Supreme Court found "that when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so." *Id.*

Although Plaintiff argues that the *Jones* decision indicates that Louisiana's executory

process procedure provides inadequate notice of foreclosure, this is simply not the case. Plaintiff ignores the Supreme Court's focus on the returned certified letters as the basis for their finding notice inadequate in *Jones*. *See id.* The opinion's requirement of "additional reasonable steps" applies to those cases in which the government is made aware that service of notice failed, *see id.* at 234, not to cases in which a property owner would simply prefer that additional information be delivered to his or her door. Plaintiff continues to ignore the "returned mail" element present in *Jones*'s progeny. *See, e.g.*, *Acevedo v. First Union Nat'l Bank*, 476 F.3d 861 (11th Cir. 2007) (undelivered certified letters); *Chaidez v. Gonzales*, 476 F.3d 1079 (9th Cir. 2007) (certified letter not received); *Luessenhop v. Clinton Cty.*, 466 F.3d 259 (2d Cir. 2006) (mailed notice not received by taxpayers); *Tu v. Nat'l Transp. Safety Bd.*, 470 F.3d 941 (9th Cir. 2006) (certified letters returned "refused" and "unclaimed"). Despite Plaintiff's complaint that the notice of sale and seizure was "terse, uninformative, and incomplete," Pl's. Mem. 16, this does not compare to the complete lack of notice provided to property owners in the *Jones* line of cases.

In sum, it is clear that the *Jones* holding does not taint the long-held constitutionality of Louisiana's executory process. The Court must conclude that Plaintiff will not succeed on the merits of her permanent injunction request with the argument that the procedure violated her due process rights. As a result, the Court must deny Plaintiff's requests for a preliminary and permanent injunction against Defendant American Bank.

### 2. Declaratory judgment

As noted above, Plaintiff has also used her Motion for Preliminary and Permanent Injunction request that this Court issue a declaratory judgment that the obligation between

Plaintiff and American Bank dated April 9, 2009, is null, void, and unenforceable. As has been made clear above, Plaintiff has asserted no valid basis for such a judgment. Even if this Court ignores the procedural defects of this request and construes it as a motion for summary judgment,[4] it cannot be granted because Plaintiff has not shown that there is no genuine issue of material fact regarding the April 9, 2009, transaction. In fact, at this time, Plaintiff has presented no legitimate arguments that the transaction should be declared unenforceable, as she had no right to rescind the transaction under either the Louisiana Civil Code or the Truth-in-Lending Act, and the foreclosure procedure did not violate Plaintiff's due process rights. Therefore, Plaintiff's motion for a declaratory judgment is denied.

## IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the Motion to Dismiss filed by American Bank and Marian Kinchen (Rec. Doc. No. 7) is **GRANTED** as set forth above.

**IT IS FURTHER ORDERED** that the Motion to Dismiss filed by Penny Daigrepont, Claire Mayer, Shapiro & Daigrepont, and Eva Simkovitz (Rec. Doc. No. 17) is **GRANTED IN PART AND DENIED IN PART** as set forth above.

**IT IS FURTHER ORDERED** that the Motion for Preliminary and Permanent Injunction filed by Plaintiff (Rec. Doc. No. 10) is **DENIED** as set forth above.

New Orleans, Louisiana, this 20th day of December, 2011.

---

[4]As American Bank duly points out, a declaratory judgment is acquired by an action for declaratory judgment, not by a motion. *See Thomas v. Blue Cross & Blue Shield Ass'n*, 594 F.3d 823, 830 (11th Cir. 2010) ("[A] party may not make a motion for declaratory relief, but rather, the party must bring an action for declaratory judgment."); *Kam-Ko Bio-Pharm Trading Co. Ltd.-Australasia v. Mayne Pharma (USA), Inc.*, 560 F.3d 935, 943 (9th Cir. 2009) (explaining that a "motion for declaratory judgment must be construed as a motion for summary judgment on an action for a declaratory judgment").

UNITED STATES DISTRICT JUDGE